An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

LUIS EDUARDO MARTINEZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 65522

FILED

NOV 1 2 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of discharging a firearm out of a motor vehicle to promote the activities of a criminal gang, discharging a firearm at or into an apartment to promote the activities of a criminal gang, and conspiracy to commit discharging a firearm at or into an apartment to promote the activities of a criminal gang. Second Judicial District Court, Washoe County; Scott N. Freeman, Judge.

Appellant Luis Martinez contends that the evidence presented at trial was insufficient to support the jury's finding of guilt. In support, Martinez argues that no witness identified him as the shooter, no physical evidence connected him to the crimes, and the incriminating evidence was merely circumstantial. Our review of the record on appeal, however, reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *See Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Multiple police officers testified that the WI gang (also known as "Western Invasion" or "Wit It") is a validated gang and that Martinez is a documented member in it. Officer Eric Chavez testified that Martinez

SUPREME COURT
OF
NEVADA

(O) 1947A

14-37296

acknowledged his membership in WI to him. Chavez testified further that WI is a known rival of the CM gang (also known as "Criminal Mexicans"). Chavez testified about gang culture and explained how a gang might gain street credibility from a drive-by shooting against a rival gang.

Alondra Perez testified that, on the night of the shooting, she, Martinez, Joel Morillon, and an unknown person rode in Morillon's red Ford Expedition in the Neil Road area, known to be CM territory. Perez testified that they saw Manuel "Silent" Patino—a known CM member—on Riley Avenue and that Martinez confronted Patino, who fired a bullet over Martinez's head and yelled out the name of his gang. Perez asserted that they had no firearms in the vehicle at this time. Perez continued that Martinez ran back to the vehicle, and they drove to Martinez's house in Sparks. Officer Chavez testified that failing to retaliate would cost a gang street credibility in a situation like this. A neighbor testified that this first gunshot occurred shortly after 8:00 p.m. and that he witnessed a red Ford Expedition leave the scene after each of the three instances of gunshots that night—he identified Morillon's vehicle as the vehicle on the scene. Former gang member Cesar Romero testified that Martinez called him, seeking Romero's support in something developing on Neil Road. Cell phone records confirm that the call occurred at 8:43 p.m.

Cell phone records indicate that Martinez made more phone calls while returning to his house in Sparks. Perez testified that numerous people were waiting for them there and that three more unknown persons entered the vehicle. Perez asserted that they searched unsuccessfully for Patino or other CM members before deciding to shoot at Patino's apartment on Riley Avenue. Perez testified that six or seven shots were fired from within the vehicle at Patino's apartment, including

from the middle row of seats where Martinez and others were seated, without recalling who fired those shots. Bullet strikes were found on Patino's apartment walls, as well as neighboring apartments. Perez testified that they drove away and dropped the unknown persons off with the guns somewhere in Sparks.

Circumstantial evidence alone may support a conviction. *Deveroux v. State*, 96 Nev. 388, 391, 610 P.2d 722, 724 (1980). Considering the initial confrontation with Patino, the return to Sparks to get firearms that were not previously in the vehicle, Perez's testimony that shots were fired from within the vehicle and from the middle seat where Martinez was seated, the location of Riley Avenue within the populated area of Reno, and Martinez's continuous involvement in this sequence, the jury could reasonably infer from the evidence presented that Martinez wantonly or maliciously discharged a firearm from within a motor vehicle in an area designated as populated or aided, abetted, counseled, encouraged, commanded, or induced another to do so. *See* NRS 195.020, NRS 202.287. Considering the above evidence, as well as Perez's testimony that Martinez and the others searched for Patino or other CM members before deciding to shoot at Patino's house, testimony that shots were fired on Riley Avenue, and the bullet strikes found on apartment walls, the jury could reasonably infer that Martinez willfully and maliciously discharged a firearm at an occupied apartment or aided, abetted, counseled, encouraged, commanded, or induced another to do so. *See* NRS 195.020, NRS 202.285. Considering the phone calls to Romero and others, the meeting at Martinez's house in Sparks, and the period of collectively searching followed by agreeing to shoot at Patino's apartment, the jury could also reasonably infer that Martinez conspired with another

person to discharge a firearm into an apartment. *See* NRS 199.480. Lastly, from the above evidence, as well as Martinez's admitted WI membership and police testimony explaining the animosity between WI and CM and the potential benefits of shooting at a rival's home, the jury could reasonably infer that Martinez undertook his conduct to promote the activities of a criminal gang. *See* NRS 193.168. Perez's inability at trial to recall many details of that night does not warrant reversal, as "it is the function of the jury, not the appellate court, to weigh the evidence and pass upon the credibility of the witness." *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 439 (1975).

Having considered Martinez's contention and concluded that it is without merit, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

cc:  Hon. Scott N. Freeman, District Judge
     Dennis W. Hough
     Attorney General/Carson City
     Washoe County District Attorney
     Washoe District Court Clerk